PIONEER STATE MUTUAL INSURANCE COMPANY v DELLS

Docket No. 310986. Submitted June 4, 2013, at Grand Rapids. Decided
June 18, 2013, at 9:10 a.m.

Toni L. Hall was killed when a trailer towed by a van driven by
Thomas E. Dells separated from the van and crashed into Hall's
vehicle. At the time of the accident, Dells and his vehicles were
covered by a motor vehicle insurance policy issued by Auto-
Owners Insurance Company that had a liability limit of $100,000.
Pioneer State Mutual Insurance Company insured Dells under a
homeowner's insurance policy at the time of the accident. That
policy had a limit of $500,000 in regard to liability for bodily
injuries and contained a liability exclusion for bodily injuries
arising out of the use of a motor vehicle or a trailer. An exception
existed to the trailer exclusion for a trailer that was not towed by
a motor vehicle. In a prior separate action, Tiffany Drye and
Stephanie Helder (the personal representatives of Hall's estate)
sued Dells for wrongful death. A tentative settlement agreement
was reached by which the wrongful-death action would be dis-
missed without prejudice, a judgment of $600,000 would be
entered against Dells, the first $100,000 of the judgment would be
satisfied by the proceeds of the Auto-Owners policy, the estate
would seek the $500,000 balance from Pioneer under Dells's
homeowner's policy, and if it was determined that there was no
coverage under the homeowner's policy, the estate would dismiss
the action with prejudice. In the instant case, Pioneer filed a
declaratory judgment action in the Kent Circuit Court against
Dells, Drye, and Helder, alleging that Auto-Owners had tendered
its policy limits to the estate, that the estate had made a claim
against Pioneer for additional sums under the homeowner's policy,
and that with respect to any liability that might be imposed
against Dells, there was no coverage available under the Pioneer
policy given its exclusion for bodily injuries arising out of the use
of a motor vehicle. Drye and Helder counterclaimed, alleging that
Dells had refused to execute the settlement agreement because of
Pioneer's warning that execution would jeopardize Dells's cover-
age under the homeowner's policy. They alleged various causes of
action, including a claim for declaratory relief. Drye and Helder
subsequently moved for summary disposition on Pioneer's de-

claratory judgment action and their counterclaim, arguing that
Hall's death arose out of the use of a trailer that was no longer
being towed at the point of impact and that the trailer exclusion
therefore did not apply in light of the exception. Pioneer also
moved for summary disposition, arguing that Drye and Helder had
failed to state a claim on which relief could be granted with regard
to the counterclaim and that there was no genuine issue of
material fact that the coverage exclusion applied because the
trailer that struck Hall was set in motion while in the process of
being towed by Dells's van. The court, Christopher P. Yates, J.,
granted Pioneer summary disposition with respect to the entire
counterclaim except to the extent that the Drye and Helder had
sought a declaratory judgment that the homeowner's policy pro-
vided coverage. The court granted Pioneer summary disposition
on its declaratory judgment claim, holding that the exclusion
barred coverage for Hall's injuries. The court concluded that the
exclusion was intended to apply where a trailer had been in tow
when it became detached and then caused bodily injuries and that
the exception to the exclusion was intended to only address those
circumstances in which a trailer was stationary, in dead storage, or
otherwise not in the process of being towed. The court entered
judgment for Pioneer. Drye and Helder appealed only the ruling on
Pioneer's declaratory judgment action.

The Court of Appeals *held*:

1. The trial court did not err by granting summary disposition
in Pioneer's favor with respect to declaratory relief. Dells generally
had personal liability coverage under his homeowner's policy, and
Halls's bodily injuries were caused by an "occurrence" as defined
in the policy. Under the exclusions in the homeowner's policy,
Dells's personal liability coverage did not apply to bodily injuries
arising out of the use of any motor vehicle or any motorized land
conveyance, including a trailer. Although an exception to this
exclusion existed for a trailer not towed by or carried on a
motorized land conveyance, it was unnecessary to reach this
exception in order to resolve the appeal. While it was accurate to
state that Hall's death arose out of the use of a trailer, it was
equally accurate to state that her death arose out of the use of a
motor vehicle, that is, Dells's van, whether the use was driving the
van with the trailer in tow or the act of connecting the van to the
trailer in the first place. Absent the use of the van to connect to
and tow the trailer, there would have been no bodily injuries. The
only reason that the trailer struck Hall's vehicle and caused her
death was that it separated from Dells's van while in the process
of being towed by the van. The van's use played an indispensable

and integral role in Hall's bodily injuries. While the trailer itself directly struck Hall, it was the use of the trailer in unison with the use and operation of the van that gave rise to Hall's death and the policy's various exceptions to the motor vehicle exclusion did not apply.

2. Even if it had been necessary to address the exception for a trailer that was not towed, Hall's death nonetheless arose out of the use of a towed trailer because if the trailer had not been in tow, there would have been no accident and no injuries. The act of towing the trailer was a necessary ingredient in producing the accident because the act had a direct causal connection to the accident, setting in motion a series of events that eventually resulted in bodily injuries. The policy's language effectively provided that the personal liability coverage did not apply with respect to bodily injuries arising out of the use of a trailer being towed. It did not provide that bodily injuries arising out of the use of a trailer was covered if the trailer was not being towed at or immediately before the time of impact between the trailer and a person or vehicle. Hall's death arose out of the use of a towed trailer. The language in the exception was intended to address the type of situation in which a trailer is sitting in a person's driveway and manages to cause injury to someone because of the alleged underlying negligence of its owner.

Affirmed.

*Jonathon Shove Damon* for Pioneer State Mutual Insurance Company.

*Varnum LLP* (by *Mark S. Allard*) for Tiffany Drye and Stephanie Helder.

Before: MURPHY, C.J., and FITZGERALD and HOEKSTRA, JJ.

MURPHY, C.J. Defendants Tiffany Drye and Stephanie Helder, copersonal representatives of the estate of Toni L. Hall (hereafter collectively referred to as "the estate"), appeal as of right the trial court's order granting summary disposition in favor of plaintiff, Pioneer State Mutual Insurance Company. Hall was killed when a trailer towed by a van driven by defendant Thomas

Edward Dells separated from the van and crashed into a vehicle driven by Hall. This appeal concerns whether the liability coverage in a homeowner's insurance policy issued by Pioneer to Dells is applicable with respect to wrongful-death damages. The policy contains a liability exclusion for bodily injuries arising out of the use of a motor vehicle, as well as a trailer, but there is an exception to the trailer exclusion for a "trailer not towed." The estate argues that Hall's death arose out of the use of a trailer that was no longer being towed at the point of impact; therefore, the trailer exclusion does not apply pursuant to the exception, resulting in liability coverage under the policy. Considering that the use of a motor vehicle, Dells's van, played an integral and indispensable role in giving rise to Hall's death, without which "use" the trailer would not have slammed into Hall's vehicle in the first place, we conclude that the motor vehicle exclusion itself bars liability coverage, regardless of the fact that it was the trailer and not the van that directly impacted Hall's car. And even if we assumed that the "trailer not towed" exception needed to be examined as part of the analysis, we conclude that Hall's death arose out of a towed trailer, given that the accident would never have occurred but for the towing of the trailer moments before impact. Accordingly, we affirm.

On the morning of October 28, 2009, Dells was driving his van eastbound on a 45 mile-per-hour, two-lane stretch of Ten Mile Road located in Kent County, and he was towing a utility trailer filled with scrap metal. At that time, the decedent, Hall, was driving a car heading westbound on the same stretch of Ten Mile Road. The trailer towed by Dells was attached to his van by means of a Reese hitch and, according to Dells's affidavit, the "hitch had been inserted into the receiver with a pin and clip (cotter) pin for six months prior to

the accident[.]" In his affidavit, Dells averred that as his van and Hall's car came close to crossing paths, and "the Reese trailer hitch separated from its receiver, causing the trailer, with the Reese hitch still attached to the trailer tongue, to separate from the van."[1] The trailer flew or bounced over another motor vehicle that had been proceeding behind Dells's van, crossed over the center line into the westbound lane, and then, hitch first and while airborne, punctured the driver's side front windshield of Hall's westbound car, impaling and killing her. Hall's car rolled over several times before coming to rest on its four wheels. A passenger in Hall's car suffered nonfatal injuries.

At the time of the accident, Dells and his vehicles were covered by a motor vehicle insurance policy issued by Auto-Owners Insurance Company (AOIC), which had a liability limit of $100,000. Pioneer insured Dells under a homeowner's insurance policy at the time of the accident, and the policy had a limit of $500,000 in regard to liability for bodily injury. In a separate action filed in January 2010, the estate sued Dells for wrongful death. AOIC retained an attorney to defend Dells, and a tentative settlement agreement was reached in December 2010 whereby the wrongful-death action would be dismissed without prejudice or costs to any party, a judgment of $600,000 would be entered against Dells,

---

[1] The responding police officer wrote in his investigation report as follows:

It appears the pin holding the Reese hitch to the vehicle was either not in place or was actually missing from the vehicle. This caused the Reese hitch to fall out of the receiver on the van. This led to the trailer separating from the towing vehicle.

Dells averred in his affidavit that "[a]t the time of the accident the safety chains for the trailer were not attached to the Reese hitch or the van" and that the "hitch separated from its receiver because the pin holding the hitch in the receiver fell out or broke[.]"

the first $100,000 of the judgment would be satisfied with insurance policy proceeds tendered by AOIC, the estate would seek the $500,000 balance from Pioneer under Dells's homeowner's policy, and if it was determined that there was no coverage under the homeowner's policy, the estate would dismiss the action with prejudice. While AOIC was prepared to settle for the $100,000 policy limit, Pioneer had not even participated in the settlement discussions, and there were indications that Pioneer would deny coverage under the homeowner's policy.[2] Pioneer had previously been notified about the lawsuit by Dells's AOIC-retained counsel, who indicated that while he had not yet determined whether the Pioneer policy was implicated, the estate thought that there may be coverage under the homeowner's policy.

The settlement agreement was not executed because Pioneer warned Dells that execution of the settlement agreement would jeopardize Dells's coverage under the homeowner's policy even if coverage was applicable.[3] As to the instant suit, in January 2011 Pioneer filed a complaint for a declaratory judgment against Dells and the estate, alleging that AOIC had tendered its policy limits to the estate, that the estate had made a claim against Pioneer for additional sums under the homeowner's policy, and that, with respect to any liability that might be imposed against Dells, there was no available coverage under the Pioneer policy given its exclusion for bodily injury arising out of the use of a motor vehicle. The estate filed a counterclaim, alleging that Dells

---

[2] In a response to a request for admissions, Pioneer admitted that it had denied coverage to Dells under the homeowner's policy on or before February 18, 2011, with respect to the estate's claims.

[3] According to the briefs on appeal, the underlying litigation has not yet been settled.

had refused to execute the settlement agreement because of Pioneer's intrusion and its warning that execution would jeopardize Dells's coverage under the homeowner's policy, assuming the existence of any coverage. The estate alleged a cause of action for breach of contract on the basis of a third-party-beneficiary theory, and it made claims for penalty interest, declaratory relief, tortious interference with a contract, and tortious interference with a business expectancy.

The estate moved for summary disposition pursuant to MCR 2.116(C)(8), (9), and (10) on Pioneer's declaratory judgment action and the estate's counterclaim. Before reciting the estate's arguments, it is necessary to give context to those arguments by quoting the relevant provisions in the homeowner's policy. In the portion of § II of the policy addressing liability coverages, the following is provided:

COVERAGE E — Personal Liability

If a claim is made or a suit is brought against an insured for damages because of bodily injury . . . caused by an occurrence[4] to which this coverage applies, we will:

1. pay up to our limit of liability [$500,000] for the damages for which the insured is legally liable.

2. provide a defense at our expense by counsel of our choice . . . . [Boldface omitted.]

In the portion of § II of the policy addressing exclusions, the following pertinent language is found:

1. Coverage E — Personal Liability . . . do[es] not apply to bodily injury or property damage:

\* \* \*

---

[4] In the section of the policy setting forth the various definitions, the term "occurrence" is defined, in part, as encompassing an accident that results in bodily injury during the policy period.

g. arising out of:

(1) the ownership, maintenance, use, occupancy, renting, loaning, loading or unloading of any motor vehicle or all other motorized land conveyances, including trailers;

\* \* \*

This exclusion does not apply to:

(1) a trailer not towed by or carried on a motorized land conveyance. [Boldface omitted.]

In its motion for summary disposition, the estate argued that insurance policies must be construed pursuant to their clear and unambiguous terms, that exclusions to coverage must be strictly interpreted in favor of coverage, that the trailer that killed Hall was "not towed" at the time that she directly incurred bodily injury and thus the exclusion was not applicable, and that the estate was entitled to judgment as a matter of law on the counts in the counterclaim. Pioneer filed its own motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), arguing that the estate had failed to state a claim on which relief could be granted relative to the counterclaim and that there was no genuine issue of material fact that the coverage exclusion was applicable given that the trailer that struck Hall was set in motion while in the process of being towed by Dells's van.

The trial court granted Pioneer's motion for summary disposition with respect to the estate's entire counterclaim, and the estate has not appealed that ruling except to the extent that the estate had sought a declaratory judgment that the homeowner's policy provided coverage for the accident. The trial court granted Pioneer's motion for summary disposition on the declaratory judgment claim, finding that the exclusion barred coverage in regard to the fatal injuries suffered by Hall that arose out of the accident. In a thoughtful

written opinion, the trial court ruled that courts in other jurisdictions addressing comparable policy language and similar facts had held, without exception, that the exclusion forecloses coverage under a homeowner's policy when damages were incurred as the result of collisions with trailers that had broken free from the vehicles that had been towing them. Relying on language of these opinions, the trial court found that the exclusion was intended to apply where a trailer had been in tow when it became detached and then caused bodily injury. The trial court, again referring to language from foreign opinions, noted that although the trailer was not in tow at the instant of impact and for a very brief moment beforehand, the only reason the trailer ended up on westbound Ten Mile Road and striking Hall's vehicle was that it had been in tow up to the moment of separation. The exception to the exclusion was intended to address only those circumstances in which a trailer was stationary, in dead storage, or otherwise not in the process of being towed. The trial court concluded that it could not be found that the trailer was "not towed" for purposes of the exception to the exclusion. Subsequently, the trial court entered a final judgment consistent with its written opinion. The estate appeals as of right.

This Court reviews de novo a ruling on a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Questions of law relative to declaratory judgment actions are reviewed de novo, but the trial court's decision to grant or deny declaratory relief is reviewed for an abuse of discretion. *Guardian Environmental Servs, Inc v Bureau of Constr Codes & Fire Safety*, 279 Mich App 1, 5-6; 755 NW2d 556 (2008). Furthermore, the proper construction and application of an insurance policy presents a question of

law that is reviewed de novo. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 528; 620 NW2d 840 (2001).

In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996), citing MCR 2.116(G)(5). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Skinner*, 445 Mich at 161; *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 437; 695 NW2d 84 (2005). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

An insurance policy is subject to the same contract interpretation principles applicable to any other species of contract. *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). Except when an insurance

policy provision violates the law or succumbs to a defense traditionally applicable under general contract law, courts "must construe and apply unambiguous contract provisions as written." *Id*. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id*. at 464. A court cannot hold an insurance company liable for a risk that it did not assume. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999). When its provisions are capable of conflicting interpretations, an insurance contract is properly considered ambiguous. *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999). "While we construe the contract in favor of the insured if an ambiguity is found, this does not mean that the plain meaning of a word or phrase should be perverted, or that a word or phrase, the meaning of which is specific and well recognized, should be given some alien construction merely for the purpose of benefitting an insured." *Henderson*, 460 Mich at 354 (citations omitted).

"A generally recognized principle of insurance law is that the burden of proof lies with the insured to show that the policy covered the damage suffered." *Solomon v Royal Maccabees Life Ins Co*, 243 Mich App 375, 379; 622 NW2d 101 (2000), citing 10 Couch, Insurance (3d ed), § 147:29, p 146-147, and *Williams v Detroit Fire & Marine Ins Co*, 280 Mich 215, 218; 273 NW 452 (1937). While the burden of proving coverage is on the insured, it is incumbent on the insurer to prove that an exclusion to coverage is applicable. *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 161 n 6; 534 NW2d 502 (1995). "While exclusions are strictly construed in favor of the insured, this Court will read the insurance contract as a whole to effectuate the intent of the

parties and enforce clear and specific exclusions." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008), citing *Hayley v Allstate Ins Co*, 262 Mich App 571, 575; 686 NW2d 273 (2004).

The estate argues that courts are required to construe insurance policies pursuant to their clear, unambiguous terms; that exclusions are to be strictly interpreted in favor of coverage; that the trailer that killed Hall was "not towed" at the time the bodily injury occurred, thereby barring application of the exclusion; and that the extrajurisdictional cases relied on by the trial court were distinguishable.

We hold that the trial court did not err by granting summary disposition in favor of Pioneer with respect to declaratory relief. There is no dispute that Dells generally had personal liability coverage under the homeowner's policy, with a liability limit of $500,000, and that in relationship to that personal liability coverage, Hall suffered bodily injury caused by an occurrence during the policy period. The question whether Dells was negligent or "legally liable" for damages is not before us. Under the exclusions in the homeowner's policy, the personal liability coverage enjoyed by Dells does not apply to bodily injury "arising out of . . . the . . . use . . . of any motor vehicle or all other motorized land conveyances, including trailers[.]" Although there is an exception to this exclusion relative to "a trailer not towed by or carried on a motorized land conveyance," we conclude that it is not even necessary to reach this exception in order to resolve the appeal.

While it is certainly accurate to state that Hall's death arose out of the use of a trailer, it is equally accurate to state that her death arose out of the use of a motor vehicle, i.e., Dells's van, whether the use was driving the van with the trailer in tow or the act of

connecting the van to the trailer in the first place. Absent the use of the van to connect to and tow the trailer that early October day, there would have been no bodily injury. The only reason that the trailer ended up striking Hall's vehicle and causing her death was that it separated from Dells's van while in the process of being towed down Ten Mile Road by the van. For purposes of the exclusion, and under the circumstances presented, one cannot logically dismiss the van's use as playing an indispensable and integral role in giving rise to Hall's bodily injury. While it was the trailer itself that directly struck Hall, the use of the trailer simply cannot stand on its own, independent of the van's use, as having been the cause of Hall's bodily injuries because it was the use of the trailer in unison with the use and operation of the van that gave rise to Hall's death. The various exceptions to the motor vehicle exclusion, including the "trailer not towed" exception, simply do not apply to Dells's van.[5]

Assuming for the sake of argument that the "trailer not towed" exception must be considered, we would still rule in favor of Pioneer. Hall's death arose out of the use of a towed trailer; if the trailer had not been in tow, there would have been no accident and no injury. The runaway trailer certainly did not launch itself. The act of towing the trailer was a necessary ingredient in producing the horrific crash because the act had a direct causal connection to the accident, setting into motion a series of events ultimately resulting in bodily injury. When read together, and omitting from consideration for now the reference to a "motor vehicle," the policy language effectively provides that the personal liability coverage is inapplicable with respect to bodily injury

---

[5] The additional exceptions concern certain off-road recreational vehicles, golf carts, and other vehicles not subject to vehicle registration.

arising out of the use of a trailer being towed or, stated otherwise, out of the use of a trailer unless it is "not towed." The estate's position is not consistent with the policy language in that it is more restrictive and confining than the words used in the policy. The policy does not provide that bodily injury arising out of the use of a trailer is covered if the trailer was "not towed" *at, or immediately before, the time of direct impact between the trailer and a person or vehicle.* The phrase "arising out of the use of" does not have a temporal component, nor even a contact component.[6] Hall's death arose out of the use of a towed trailer. One simply cannot separate the use of the trailer from the act of towing when determining what the bodily injury arose out of for purposes of applying the policy's language.

Furthermore, it is abundantly evident from the language used in the policy that the exception is intended to address the type of situation in which, for example, a trailer is sitting in a person's driveway and manages to cause injury to someone because of the alleged underlying negligence of its owner, who then seeks counsel through the insurer to mount a defense against a resulting lawsuit and protection from liability under the policy.

Finally, cases from other jurisdictions provide additional support for our holding. In *Nationwide Mut Ins Co v Integon Indemnity Corp*, 123 NC App 536, 538-539; 473 SE2d 23 (1996), the North Carolina Court of

---

[6] If, for example, a motor vehicle attempted to move into a lane of traffic occupied by a second vehicle and, absent physical contact, the maneuver caused the second vehicle to swerve off the roadway, go down an embankment, and then moments later crash into a utility pole, causing bodily injury, the exclusion here would still apply, given that the bodily injury arose out of the use of a motor vehicle, despite the absence of contact between the two vehicles and a delay between the causative driving maneuver (the use of the vehicle) and the subsequent crash.

Appeals, addressing policy language and factual circumstances comparable to those here, stated and ruled as follows:

[T]he evidentiary materials in the record tend to show that on the date of the accident, defendant Timothy Ward was towing the metal livestock trailer behind Peggy Ward's 1979 Chevrolet truck. The truck had a towing ball, but the towing ball was not secured to the vehicle, and the safety chains on the trailer were not used or attached to the truck. The trailer subsequently became disconnected from the truck, crossed the center line of the highway, and struck Lynda Wood's car, resulting in her death. The complaint in the underlying wrongful death lawsuit alleges Timothy Ward's negligence in the operation of the truck, in exceeding a safe speed when towing an improperly loaded and secured trailer, and in "improperly load[ing] the trailer without regard to the danger in towing it . . . ."

. . . In this case, . . . the defendant Estate's damages are alleged to have resulted solely from Timothy Ward's "use" of the truck in towing the trailer, and not any independent "non-automotive" cause. His alleged negligence in attaching, securing and towing the trailer could not have caused damages that were independent of the "use" of the truck itself. The homeowners liability policy expressly excepts liability arising in connection with the "use" of motor vehicles. The damages, therefore, arose outside the scope of coverage, under the plain language of the homeowners policy.

Defendant Estate argues that the trailer is a "vehicle or conveyance not subject to motor vehicle registration," as described in section (4)(a) [of the policy], and is therefore not subject to the exclusion. Nonetheless, the exclusion still applies because the accident, and therefore the damages to the Estate, arose out of, and could not have occurred without, the "use" of the truck.

We therefore hold that any damages arising out of the underlying lawsuit are excluded, by the motor vehicle exclusion, from the scope of the personal liability coverage

provided by the Wards' homeowners policy. [Second alteration and first omission in original.]

The North Carolina case is consistent with our analysis with respect to the use of a motor vehicle, Dells's van, and its indispensable role in giving rise to Hall's bodily injuries.

In *White v American Deposit Ins Co*, 732 So 2d 675, 677 (La App, 1999), the Louisiana Court of Appeal observed:

> [T]he State Farm homeowner's policy was intended to exclude a boat and trailer in tow. The fact that the boat and trailer became detached and crossed the median into the path of Rose White does not render the boat "not in tow" for purposes of taking it out of the exclusion. The boat and trailer were moving, and since the trailer had no power of its own, the movement was attributable to the towing vehicle. Hence, even if the boat was not in tow at the point of impact, the damages of Rose White arose out of the use of a motor vehicle and were directly related to the towing of the boat and trailer.
>
> The homeowner's policy of State Farm does not apply . . . .

Applying this sound logic and reasoning here, Dells's trailer was moving when the accident occurred, and because the trailer had no power of its own, the movement was attributable to the towing vehicle, Dells's van. Hence, even if the trailer had not been in tow at the point of impacting Hall's car, the estate's damages nonetheless arose out of the use of a motor vehicle and were directly related to the towing of the trailer.

Affirmed. Pioneer, having fully prevailed on appeal, is awarded taxable costs pursuant to MCR 7.219.

FITZGERALD and HOEKSTRA, JJ., concurred with MURPHY, C.J.