# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM J. WADDELL,

Plaintiff-Appellant,

v

JOHN D. TALLMAN and JOHN D. TALLMAN
PLC,

Defendants-Appellees.

UNPUBLISHED
December 20, 2016

No. 328926
Kent Circuit Court
LC No. 15-002530-CB

Before: WILDER, P.J., and MURPHY and O'BRIEN, JJ.

O'BRIEN, J. (*concurring in part and dissenting in part*).

I cannot agree that a question of fact exists as to the existence of an implied-in-fact contract in this case. Accordingly, I respectfully dissent in that regard.[1]

This Court has recognized, as the majority explains, as follows:

[A] contract implied in fact arises

> when services are performed by one who at the time expects
> compensation from another who expects at the time to pay
> therefor. The issue is a question of fact to be resolved through the
> consideration of all the circumstances, including the types of
> services rendered, the duration of the services, the closeness of the
> relationship of the parties, and the express expectations of the
> parties. However, when one renders personal services to another
> merely upon the expectation of a legacy promised without a
> contract obligation, the promisee takes his chances on receiving the
> legacy, and, if his expectations are disappointed, he can recover

---

[1] I do, however, agree that a question of fact does not exist as to the existence of an implied-in-law contract. It is important to note, however, that plaintiff's arguments identified only an implied-in-law contract as grounds for recovery. Nevertheless, I am compelled to also address the existence, or lack thereof, of an implied-in-fact contract as well.

> nothing. [*In re McKim Estate*, 238 Mich App 453, 458; 606
> NW2d 30 (1999) (citations and quotation marks omitted).]

Stated differently, an implied-in-fact contract, like an express contract, requires that the elements of a contract be present. "In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v Leja*, 187 Mich App 418, 422; 468 NW2d 58 (1991).

Applying those rules to the facts of this case, it is clear that there is no genuine issue of fact as to whether a valid contract exists between the parties—one does not. Plaintiff referred the client at issue to defendant in early 2012. In March 2013, approximately *one year* after the client first met with defendant, plaintiff's secretary sent a letter "confirm[ing]" the referral and "a one-third referral fee." However, sending a confirmation letter is not an, much less the only, element of a valid contract. And here, both parties presented evidence that, even when viewed in a light most favorable to plaintiff, *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), established that, at a minimum, mutual agreement did not exist, *Thomas*, 187 Mich App at 422. While it is clear that plaintiff *wanted* a referral fee, it is equally clear that the parties never agreed upon one. For example, it is undisputed that plaintiff asked for "a one-third referral fee," and, according to plaintiff's own memoranda, defendant "said he would not be giving him the standard 1/3 fee because of the amount of time and expert expenses he has in the case."

More importantly, however, it is clear that there is no genuine issue of fact as to whether defendant, *at the time of the referral*, expected to compensate plaintiff for the referral. There is not any evidence in the record that plaintiff and defendant even communicated regarding the referral when the client was referred to defendant, much less any evidence that they actually reached an agreement in that regard at that time. Instead, plaintiff contacted defendant, *after the referral was made*, expressing his desire for a referral fee. These subjective desires, and even his post-referral expressions of them, certainly did not create an implied-in-fact contract.[2]

Plaintiff argues, and the majority concludes, that an implied-in-fact contract nevertheless exists despite these shortcomings because "there was evidence, sufficient to survive summary disposition, showing that Tallman had generally agreed to pay plaintiff a referral fee." I cannot find any evidence in the record to support such a position. Plaintiff and the majority reference defendant's eventual offer to settle this fee dispute, but I am not willing to conclude that this after-the-fact attempt at settlement somehow created an implied-in-fact contract at the time of the referral.[3] Furthermore, while the client, obviously, was aware of the referral, it does not appear

---

[2] As he acknowledges in his own affidavit, he and defendant only "had several conversations during which [they] discussed the fact that [plaintiff] was the lawyer who referred [the client] and the case . . . to [defendant]" "*[a]fter* [plaintiff] was advised that [the client] followed [his] advice and had met with [and] retained John Tallman[.]" (Emphasis added.)

[3] In plaintiff's summary-disposition motion, he essentially admits that an implied-in-fact contract does not exist, relying instead on the fact that defendant "has acknowledged . . . that he, attorney

that the client was aware of a fee *agreement* between the parties, and the comment to MRPC 1.5(e) certainly contemplates that awareness.[4]

Accordingly, I believe that summary disposition with respect to each of plaintiff's claims was appropriate. Therefore, I would affirm the trial court's opinion and order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10).

/s/ Colleen A. O'Brien

---

Waddell, provided Mr. Tallman's name to [the client]." There is no legal authority to support the idea that merely referring a client to a different attorney creates a binding implied-in-fact contract requiring the payment of a reasonable referral fee.

[4] The comment provides, in relevant part, as follows: "Paragraph (e) permits the lawyers to divide a fee on agreement between the participating lawyers if the client is advised and does not object. It does not require disclosure to the client of the share that each lawyer is to receive." Thus, while MRPC 1.5(e) does permit attorneys to share fees without informing the client regarding the share each will receive, the comment appears to indicate that the client must be aware that the attorneys will be sharing the fee, not merely that one of the attorneys referred him or her to the other and expects a fee. With that understanding, one could argue that sharing the fees collected in this case would not only be inconsistent with MRPC 1.5(e) but also likely violate it.