# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER SCOTT CHATFIELD,

        Plaintiff-Appellant,

v

KENNETH NEWTON ROUPE,

        Defendant-Appellee.

UNPUBLISHED
May 9, 2017

No. 331086
Monroe Circuit Court
LC No. 14-137034-NI

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Plaintiff, Christopher Chatfield, appeals by right the trial court's order granting defendant, Kenneth Roupe's, motion for summary disposition under MCR 2.116(C)(10). Because there was a genuine issue of material fact as to whether Chatfield was more than 50 percent at fault for the accident, we reverse and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

This case arises from a motor vehicle/pedestrian accident that occurred around 9:15 p.m. on November 2, 2013. Chatfield was walking home from the Applebee's restaurant where he worked. He testified that he crossed Monroe Street at Mall Road and was then walking northbound on Monroe Street. Roupe was driving northbound on Monroe Street, talking on his cell phone with his girlfriend.[1] His vehicle struck Chatfield near the intersection of Monroe Street and LaSalle Road. Chatfield was severely injured.

At the time, Monroe Street consisted of four lanes, two heading north and two heading south. The roadway was straight and flat. Several witnesses testified it was dark at the time of the accident and that the area where Chatfield was hit was not-well lit. Also, Roupe testified that the road conditions were clear, that he was not under the influence of any substances that would impair his driving, and that he had his lights on. Chatfield recalled that before the accident he was walking on the shoulder, to the left of the fog line, but he could not remember the exact spot

---

[1] The record indicates that he was using a hands-free device.

where he was hit. He was certain, however, that he was not in the road because he remembered crossing Monroe already and because he "walked the same path every single day." He explained that he usually stayed to the gravel part of the shoulder, but would sometimes walk on the paved part of the shoulder, which he described as something like a bike path. Roupe, however, testified that Chatfield was in the road when he hit him, and the responding police officer, Deputy Ryan Sottile, opined that Chatfield had been crossing the road when he was struck.

Roupe moved for summary disposition under MCR 2.116(C)(10). He asserted that the undisputed facts showed that Chatfield was in the road, wearing all-black when he was struck, and that, as a matter of law, no reasonable juror could conclude that Roupe was more at fault then Chatfield. The trial court agreed and granted summary disposition in Roupe's favor. Chatfield moved for reconsideration, which the court denied, and this appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Chatfield argues that the trial court erred by granting Roupe's motion for summary disposition under MCR 2.116(C)(10). Whether a trial court properly granted summary disposition is reviewed de novo. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). When deciding a summary disposition motion under MCR 2.116(C)(10), the trial court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and refrain from making credibility determinations or weighing the evidence. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "[I]f material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Id*.

### B. ANALYSIS

If a party is found for be more than 50 percent at fault for his or her injuries, he or she cannot recover non-economic damages. MCL 500.3135(2)(b). Generally, comparative fault is a question of fact for the jury. *Zaremba Equipment Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 33; 761 NW2d 151 (2008). However, if no reasonable juror could conclude that the defendant was more at fault than the plaintiff, then the trial court may grant summary disposition on an issue of comparative fault. See *Huggins v Scripter*, 469 Mich 898 (2003).[2]

Chatfield contends that there were factual disputes on two key points: whether he was wearing a black jacket or a red shirt and whether he was walking in the roadway or on the shoulder. We agree.

---

[2] *Huggins* is binding because it is a final Supreme Court disposition of an application that contains a concise statement of the applicable facts and the reason for the decision. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

Roupe and Deputy Sottile testified that Chatfield was wearing a black leather jacket when he was struck by Roupe's vehicle.[3] However, Chatfield testified that he was wearing a red shirt and was carrying his black leather jacket. Further, Roupe testified at one point that he did not recall who placed Chatfield's jacket over him after the accident, which suggests that Chatfield was not wearing his jacket at the time of impact. Viewing these facts in the light most favorable to Chatfield, there was a factual dispute as to whether Chatfield was wearing a red shirt or a black jacket at the time of the accident.

In addition, there was a factual dispute regarding whether Chatfield was on the shoulder or in the roadway when he was struck by Roupe's vehicle. Roupe consistently asserted that Chatfield was in the road when he hit him, and Deputy Sottile testified that based on the physical evidence at the scene, he believed Chatfield had been crossing the road at the moment of impact.[4] Accordingly, Chatfield was required to come forward with evidence establishing a genuine issue of material fact. *Barnard Mfg Co, Inc*, 285 Mich App at 369. And as the party opposing the motion, Chatfield could "not rest upon mere allegations or denials in the pleadings" and was required to "set forth specific facts using documentary evidence to show the existence of a genuine issue for trial." *Libralter Plastics, Inc v Chubb Group Ins Co*, 199 Mich App 482, 485; 502 NW2d 742 (1993).

Chatfield argues that the evidence allows for an inference that he was on the shoulder because it was his habit or routine to walk along a specific route and stay off the roadway. MRE 406 states that "[e]vidence of the habit of a person or of the routine practice of an organization whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." "Such evidence must establish a set pattern or show that something is done routinely or has been performed on countless occasions." *Laszko v Cooper Laboratories, Inc*, 114 Mich App 253, 256; 318 NW2d 639 (1982). Here, Chatfield typically walked to and from work. He explained:

> When I leave Applebee's, I walk down Mall Road, and then I cross at the light when I get to Monroe Street. So that would be right at the corner of Monroe Street and Mall Road.

---

[3] On appeal, Chatfield contends that Deputy Sottile is biased against him because Sottile is related to Chatfield's ex-girlfriend, who is also the mother of Chatfield's child. He asserts that Sottile does not like him. Chatfield, however, did not present any evidence demonstrating Sottile's potential personal bias against him during the proceedings for summary disposition. Moreover, it would be improper to discount Sottile's testimony on account of a credibility challenge. A trial court should not make credibility determinations when reviewing a motion for summary disposition. *Pioneer State Mut Ins Co*, 301 Mich App at 377.

[4] Chatfield argues that the trial court improperly relied on Deputy Sottile's police report. However, Deputy Sottile testified to everything in his report and his testimony is admissible. Therefore, even if the court improperly relied on the police report, any error is harmless.

He stated that he would then take Monroe Street to his house and added that he walked the "same path every single day." Further, he recalled that on the night of the accident, he left Applebee's, walked down Mall Road and crossed Monroe Street, before continuing down northbound Monroe toward his home. Chatfield testified about the shoulder and where he would usually walk. He explained that the shoulder on Monroe Street is mostly gravel, although there is "about maybe two feet of pavement from the white line." He stated that he would "usually always walk off the pavement when I could," but that when he got to driveways or bridges he would have to be on pavement. He indicated that when he is on the pavement he is on something like a bike path, and is "not, like, on the street." Chatfield testified that he "usually stay[s] pretty clear of the road." Viewing this evidence in the light most favorable to Chatfield, it is apparent that Chatfield travelled the same route routinely and on countless occasions. Therefore, the habit evidence was admissible to establish that his behavior on the night in question was in conformity with that routine practice. See MRE 406. In other words, the evidence allows for an inference that Chatfield was, per his routine, on the shoulder, staying clear of the roadway.[5]

Moreover, even if Chatfield was in the roadway and was wearing a black jacket, reasonable minds could differ on his level of fault. See *Zaremba Equipment Inc*, 280 Mich App at 33 (stating that comparative negligence is typically left to the fact-finder because reasonable minds could differ on a plaintiff's level of fault). Chatfield's expert, Thomas Bereza, reviewed the specifications for Roupe's vehicle and was aware that Roupe's vehicle had halogen lights. He opined that the lights would illuminate around 175 to 200 feet in front of Roupe's vehicle. He further opined that, given that it was a straight, flat road and that Chatfield was wearing red,

---

[5] Chatfield also asserts that there was a factual dispute as to whether he was on the shoulder or in the roadway based on Roupe's statements and the position of Roupe's vehicle after the accident. In support, he points out that Roupe told his girlfriend that he did not see Chatfield until he was hitting him. Further, in his own deposition, Roupe testified when he saw Chatfield, he "had tried to—I started to swerve off and I hit him." After hitting Chatfield, Roupe stopped his vehicle and did not move it. Photographs of the vehicle show that the front two tires were on the shoulder, not on the roadway. From this evidence, Chatfield asserts a juror could infer that Roupe swerved before he hit or saw Chatfield and that when swerving his vehicle crossed from the roadway to the shoulder where Chatfield was walking. Chatfield's expert, Thomas Bereza, testified to a similar chain of inferences, also opining that Chatfield was on the shoulder at the time of the accident. However, both Chatfield and Bereza have taken Roupe's statement out of context. He actually testified that "somebody had walked in front of me, and when I seen him I had tried to— I started to swerve off and I hit him." Thus, this chain of inferences necessarily relies on a selective and unfair parsing of Roupe's testimony. Moreover, given the tenuousness of the inferences at this point in the proceedings, this evidence amounts to nothing more than mere conjecture or speculation. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994) (holding that if there is a logical gap between the facts alleged and the established facts, the court must disregard the alleged facts as mere conjecture and speculation). At trial, Chatfield may be able to develop this theory further; however, for purposes of this motion for summary disposition, it is too speculative and must be disregarded.

Roupe should have seen Chatfield.[6]  Viewed in the light most favorable to Chatfield, Roupe did not see Chatfield until he was hitting him.[7]  In sum, even if there was evidence that Chatfield was negligent for walking in the roadway, there was also evidence that Roupe was negligent for failing to see him in time to avoid the accident.

Chatfield also argues that he was entitled to a presumption of negligence because Roupe violated the "assured clear distance statute" and was unable to rebut the presumption by showing a sudden emergency or adequate excuse.  The facts in this case stand in stark contrast to those in *Huggins*, where our Supreme Court stated summary disposition on the issue of comparative negligence was appropriate because:

> The evidence presented shows that plaintiff was crouching or kneeling in the middle of an unlit rural road in the middle of the night, just beyond the crest of a hill, wearing dark colored clothing at the time he was struck by defendant's automobile.  Tests performed by a police accident reconstruction expert revealed that no driver would have enough time to avoid the collision, given the decedent's location just beyond the crest of the hill. [*Huggins*, 469 Mich at 898-899.]

Here, there was no testimony that Chatfield suddenly darted in front of Roupe thereby making it impossible for Roupe to avoid striking him with his vehicle.  Indeed, there was no testimony about unusual or extenuating circumstances that would excuse Roupe's failure to see Chatfield until it was too late.  A jury viewing the conflicting evidence in this case could conclude that even if Chatfield was in the roadway and was wearing a black jacket, he would have been illuminated by Roupe's headlights in enough time for Roupe to avoid the accident.  Thus, contrary to Roupe's argument, it is not clear as a matter of law that Chatfield bore the majority of liability.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Chatfield, as the prevailing party, may tax costs.  MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

---

[6] Roupe argues that Bereza's testimony should be discounted because it is based on speculation and conjecture.  An expert opinion must be derived from facts established in some manner by the record.  MRE 702; *People v Dobek*, 274 Mich App 58, 94-95; 732 NW2d 546 (2007).  However, although parts of Bereza's testimony and reports do appear to be based on speculation, the testimony with regard to the illumination from Roupe's lights, the road condition, and the fact that Roupe was distracted by his cell phone appear to be fairly drawn from the evidence in the record.

[7] Roupe made several slightly different statements in this case.  Relevant to this point, he told his girlfriend that he did not see Chatfield until he hit him, but in other statements he testified that he saw Chatfield moments before hitting him.