# STATE OF MICHIGAN

# COURT OF APPEALS

JACQUES ZAKARIA,

      Plaintiff-Appellant,

v

AL-GHADEER MEAT MARKET, INC.,

      Defendant-Appellee.

UNPUBLISHED
July 20, 2017

No. 331952
Wayne Circuit Court
LC No. 15-002801-NO

Before: MURPHY, P.J., TALBOT, C.J., and O'CONNELL, J.

PER CURIAM.

Plaintiff Jacques Zakaria appeals as of right the trial court's order granting summary disposition in favor of defendant Al-Ghadeer Meat Market, Inc. (the market), under MCR 2.116(C)(10). Plaintiff allegedly slipped and fell on black ice in the market's parking lot on a December morning in 2013. The trial court summarily dismissed the case on the basis of the open and obvious danger doctrine. We affirm.

## I. BACKGROUND

## A. ALLEGATIONS IN COMPLAINT

On March 4, 2015, plaintiff filed his complaint against the market, alleging claims of negligence and premises liability. Plaintiff alleged that on December 16, 2013, he was walking in the market's parking lot as a business invitee when "he violently slipped and fell on black ice, which ice was not visible, [and] which fall caused Plaintiff to sustain severe injuries to his head . . . ." Plaintiff claimed that his injuries included "a 1.4 cm subdural hematoma in the left frontal and parietal region with mass effect on the left frontal lobe, resulting in dizziness, headaches, and seizures[.]" (Emphasis omitted.) Plaintiff further alleged that the market, by way of a laundry list of actions or inactions, breached its duty of care: to maintain the premises in a safe condition; to exercise reasonable care to diminish the hazard created by the presence of black ice; to take reasonable and appropriate measures within a reasonable time to alleviate the hazard; to exercise reasonable care and caution for the health, safety, and well-being of business patrons; to warn patrons of the dangerous condition; and to obey the common law, city ordinances, and Michigan statutory law. Plaintiff asserted that the market's breaches of the duties of care caused him to suffer damages, including permanent severe injuries, pain and suffering, mental anguish, and substantial medical expenses.

-1-

## B. THE MARKET'S MOTION FOR SUMMARY DISPOSITION AND THE DOCUMENTARY EVIDENCE

On October 7, 2015, the market filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). The market first argued that because the wintry conditions, including and especially the alleged black ice, were open and obvious, the market owed no duty of care to plaintiff, thereby entitling it to summary disposition. In the alternative, the market maintained that summary disposition should be granted in its favor, considering that plaintiff could not prove that the market knew or should have known about the alleged dangerous condition. In support of its motion, the market attached a partial transcript of plaintiff's deposition testimony and meteorological data from Kahlbaum & Associates, Inc., which company provides consultancy services in meteorology and computer programming analysis. In plaintiff's response, he argued that he was an invitee entitled to the highest level of protection, that black ice, by its very nature, is invisible, that the surrounding weather conditions at the time of the fall were not such that a reasonable person would have anticipated the presence of black ice, that market employees in charge of maintenance were aware of the dangerous condition, and that the market, despite having knowledge of the hazard, refused to remedy the situation. In support, plaintiff attached transcripts of depositions of himself, his wife, who was with him when he fell, the market's manager, and market employees, along with meteorological data. We shall now summarize the documentary evidence as relevant to the open and obvious danger doctrine.[1]

Plaintiff, who has lived in Canada since 1975 and is of Lebanese descent, testified in his deposition that he regularly crossed the border and patronized the market and that he and his wife arrived there to purchase meat at 8:30 a.m. on December 16, 2013. According to plaintiff, the sun was about to rise, the sky was clear, and "it was very cold."[2] He testified that the roadways were clear of snow, although there was "a lot of snow" on grassy areas and the side of the road, that it was not snowing, and that he could not recall when it had last snowed. Plaintiff described the market's parking lot as appearing clear of snow and ice, but there was snow around the perimeter of the lot. Plaintiff testified that he and his wife parked their vehicle in the market's parking lot, exited their car, and started walking toward the front door of the market, with plaintiff walking ahead of his wife. When he was within five feet of the market's entrance, he slipped and fell to the ground. Plaintiff testified that when he fell, it felt like he was slipping on ice, even though he never looked to see or tried to feel if ice was indeed present, given that he was in too much pain at the time. He had not seen any ice before the slip and fall. Plaintiff stated that his wife observed the fall and that there were no other persons in the parking lot. He testified that his wife screamed for help when he fell, that some of the market's employees came outside to assist, and that they provided him with ice for his injuries. Plaintiff claimed that no

---

[1] We do note that all of the deposition testimony indicated that the parking lot had not been salted before plaintiff slipped and fell and that salt was spread on the area of the fall and the lot generally shortly following the accident. Market employees generally salted the parking lot daily during the winter as a matter of routine.

[2] For purposes of our review of all of the deposition testimony, descriptions of conditions, the parking lot, and other circumstances shall pertain to the time of plaintiff's early-morning fall on December 16, 2013, unless otherwise indicated.

incident report was prepared by the market, and he and his wife purchased meat and left for their trip back to Canada within about 15 minutes of the accident. He testified that he was familiar with cold, snowy, and wintry conditions, considering his longtime residency in Canada. Plaintiff had never had any previous problems concerning the market's parking lot.[3]

Plaintiff's wife testified in her deposition that she and plaintiff arrived at the market by car around 8:30 a.m., that they exited their car and headed toward the market, that plaintiff was walking ahead of her, that plaintiff fell close to the market's front door, and that she yelled for help. She indicated that it was cold, that there was accumulated snow on the sides of the parking lot, that there was no snow covering the parking lot itself, that it was not snowing, that there were no puddles in the parking lot, and that she had not seen any ice before the fall. Plaintiff's wife further testified that the ice upon which plaintiff slipped was "clear," that you could not see it, and that she discovered the presence of the ice by putting her hand on the ground and feeling it. She described it as "a black ice spot."

The market's manager testified in his deposition that the market opens at 8:00 a.m. every day, that his daughter owns the market, that he was not present when plaintiff fell but arrived at the market shortly thereafter, and that he understood that plaintiff fell just before 8:00 a.m. He further stated that an incident report was not prepared relative to the slip and fall and that no photographs were taken at the time of the area where plaintiff fell. The manager also indicated that the ice upon which plaintiff slipped was not visible from a standing position, but he then contradicted himself and testified, "As I stood, I could see it." He next testified that it was a two-foot patch of ice and that it was "[c]lear, I could see it."

One of the market's butchers who was at the market when plaintiff fell testified that the market has one front door for customers and one door in the rear of the market for employees. He arrived at work around 7:45 or 7:50 a.m., entering through the backdoor, and the butcher claimed that plaintiff fell around 7:50 or 7:55 a.m. He was alerted to the incident when plaintiff's wife yelled for help. The butcher testified that it was a "very, very cold day," that there was snow and ice covering the parking lot, that it was light out but not sunny, and that there was no snow in the parking lot on the day prior to the fall.

A second butcher who was present testified that he arrived at the market around 7:50 a.m., that the fall occurred just before 8:00 a.m., which is when he heard plaintiff's wife yell for assistance, that it was light out but overcast, that it was very cold, that "[t]here was no snow but

---

[3] In answers to interrogatories, plaintiff indicated that the fall occurred at 8:30 a.m., that, after exiting his vehicle and walking toward the market, he slipped and fell on the ice about five feet from the market's entrance, that he did not see the ice before he fell, that "it was very cold" at the time of the incident, and that "plaintiff and his wife noticed the black ice after the slip and fall." We do note, however, that these interrogatory answers, while part of the lower court record, were not submitted by either party to the trial court in connection with the motion for summary disposition.

there was a thick layer of ice" covering 70 to 80 percent of the parking lot,[4] and that one could clearly see the ice while standing up, absent any need to bend over and identify it by touch.

Meteorological data and documents submitted by the parties showed, with respect to the date of the incident, that the sun had risen at 7:56 a.m., that it was 6°F and partly cloudy at 8:00 a.m., with a wind speed of 6 mph, that the temperature had gradually dropped during the preceding night, starting with a high of 17°F at midnight, that a trace of snow, under an inch, fell between 1:00 a.m. and 3:00 a.m., and that there was six inches of existing snow generally present on the ground. In regard to the day before plaintiff fell, December 15, 2013, the data and documents revealed that the temperatures had ranged between 17°F and 25°F, according to the market's evidence, or between 15°F and 26°F, according to plaintiff's evidence. Also as to December 15, 2013, the market submitted documentary evidence indicating that 4.2″ of snow had fallen, but the data offered by plaintiff reflected that no snow fell that day. We note that the market's evidence regarding snowfall on December 15th pertained to Dearborn, the location of the market, while plaintiff's evidence on the subject concerned Detroit.

## C. THE TRIAL COURT'S RULING

The trial court, ruling from the bench, granted the market's motion for summary disposition, reasoning as follows:

Plaintiff indicates that it was very cold outside on the day of the fall. The Plaintiff also testified that there was snow on the side of the parking lot. Further, the weather records indicate that the temperature was at or below freezing.

Given these wintry conditions[,] an average user of ordinar[y] intelligence could have discovered the hazardous condition upon casual inspection. [I] believe that the condition was open and obvious.

Plaintiff contends that the cases cited by the [market] differ from the facts here because the cited cases involve situations where the black ice was under snow. With regard to ice-covered surfaces without the presence of snow[,] the Supreme Court has felt that the danger . . . posed by visible frost and ice is [still] an open and obvious hazard.

An order granting the market's motion for summary disposition was entered on February 23, 2016, and plaintiff did not file a motion for reconsideration. Plaintiff now appeals as of right.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). With respect to a motion for

---

[4] The butcher did not specifically speak to whether there was ice where plaintiff fell.

summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), set forth the governing principles:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

## B. PREMISES LIABILITY – GENERAL GOVERNING PRINCIPLES

In *Hoffner*, 492 Mich at 459-460, the Michigan Supreme Court set forth a foundational overview of the law concerning premises liability, observing:

> The law of premises liability in Michigan has its foundation in two general precepts. First, landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land. Second, and as a corollary, landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land. These principles have been used to establish well-recognized rules governing the rights and responsibilities of both landowners and those who enter their land. Underlying all these principles and rules is the requirement that both the possessors of land and those who come onto it exercise common sense and prudent judgment when confronting hazards on the land. These rules balance a possessor's ability to exercise control over the premises with the invitees' obligation to assume personal responsibility to protect themselves from apparent dangers.
>
> The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land. With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land. Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect. [Citations omitted.]

## C. THE OPEN AND OBVIOUS DANGER DOCTRINE AND BLACK ICE

Contemplation of whether a hazard or defect is open and obvious is an integral component of defining the duty owed by an invitor to an invitee. *Hoffner*, 492 Mich at 460.[5] A possessor of land does not owe a duty to protect or warn an invitee of dangers that are open and obvious. *Id.* This is true "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id.* at 461 (citations omitted). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id.* (citations omitted). This analysis entails application of an objective standard, requiring examination of the objective nature of the condition of the premises. *Id.*[6]

It is well established that wintry conditions can be deemed open and obvious, and "Michigan courts thus ask whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger." *Id.* at 464. In a recent order, our Supreme Court reversed a decision by this Court and ruled that "[t]he trial court correctly held that, notwithstanding the low lighting in the parking lot, the presence of wintery weather conditions and of ice on the ground elsewhere on the premises rendered the risk of a black ice patch 'open and obvious such that a reasonably prudent person would foresee the danger' of slipping and falling in the parking lot." *Ragnoli v North Oakland-North Macomb Imaging, Inc*, __ Mich __, entered April 14, 2017 (Docket No. 153763) (citation omitted). And in *Cole v Henry Ford Health Sys*, 497 Mich 881, 881 (2014), the Supreme Court similarly stated in an order:

> Here, the so-called "black ice" was detected by four other witnesses who viewed the premises after the plaintiff's accident. There were several patches of ice evident in the area where the plaintiff fell. In addition, there were numerous indicia of a potentially hazardous condition being present, including seven inches of snow on the ground, some precipitation the previous day, and a recent thaw followed by consistent temperatures below freezing. A reasonably prudent person would foresee the danger of icy conditions on the mid-winter night the plaintiff's accident occurred. [Citation omitted.]

In yet another Supreme Court order, the Court ruled:

> "[B]lack ice" conditions [are rendered] open and obvious when there are indicia of a potentially hazardous condition, including the specific weather conditions present at the time of the plaintiff's fall. Here, the slip and fall occurred in winter, with temperatures at all times below freezing, snow present around the

---

[5] There is no dispute that plaintiff was a business invitee.

[6] An exception to the duty owed for open and obvious dangers arises when special aspects of a condition make even an open and obvious risk unreasonable. *Hoffner*, 492 Mich at 461. Special aspects exist when an open and obvious hazard remains unreasonably dangerous or when it is effectively unavoidable. *Id.* at 461-463. Plaintiff does not contend that a special-aspect exception applies in this case, and the record would not support such an argument even if made.

defendant's premises, mist and light freezing rain falling earlier in the day, and light snow falling during the period prior to the plaintiff's fall in the evening. These wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection. [*Janson v Sajewski Funeral Home, Inc.*, 486 Mich 934, 935 (2010) (citations and quotation marks omitted).]

In the *Janson* order, *id.*, our Supreme Court relied on and cited favorably this Court's opinion in *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474; 760 NW2d 287 (2008), and specifically page 483 of the opinion, where the *Slaughter* panel stated:

The overriding principle behind the many definitions of black ice is that it is either invisible or nearly invisible, transparent, or nearly transparent. Such definition is inherently inconsistent with the open and obvious danger doctrine. Consequently, we decline to extend the doctrine to black ice *without evidence that the black ice in question would have been visible on casual inspection before the fall or without other indicia of a potentially hazardous condition.* [Emphasis added.]

Accordingly, for our purposes, the question is whether there exists a genuine issue of material fact concerning whether the black ice upon which plaintiff allegedly slipped would have been visible on casual inspection before the fall or whether there were other indicia of the potential for black ice.

## D.  DISCUSSION

Plaintiff first argues, in very cursory and confusing fashion, that the market misled the trial court by inaccurately indicating that it had snowed the day before the fall, or that it had snowed 4.2″ that day, and by suggesting that plaintiff in his deposition agreed with the market's weather records.  In support of his position, plaintiff attaches post-judgment email communications between a Tony Zakaria, evidently plaintiff's son, and the market's meteorological expert regarding methods and the timing of measuring snowfalls and snow depths, along with a slew of weather data and documents apparently provided by the expert to Zakaria.  None of this evidence is included in the lower court record.

In response, the market has attached the affidavit of its meteorological expert, challenging plaintiff's assertions; the affidavit, of course, is also not part of the lower court record.  The expert avers that Zakaria misrepresented himself in communicating with the expert, that the expert stands by the weather information and history provided earlier for purposes of summary disposition, and that he sent Zakaria weather data pertaining to Detroit, as collected at Detroit Metropolitan Airport, along with weather data pertaining to Dearborn, as collected at two weather stations in Dearborn operated by the University of Michigan.  When we examine the Dearborn weather records that were sent to Zakaria and attached to plaintiff's own appellate brief, we notice that one of the Dearborn stations measured 4″ of snowfall on December 15, 2013, while the other Dearborn station measured 4.3″ of snowfall on that date, making the 4.2-

inch amount conveyed to the trial court reasonably accurate and certainly not misleading.[7] Again, the market is in Dearborn. The weather records show that 1″ of snow fell at Detroit Metropolitan Airport on December 15, 2013.

Regardless of these arguments, we cannot consider any of this new documentary evidence, as it is not part of the existing record. MCR 7.210(A)(1) ("In an appeal from a lower court, the record consists of the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced."). Moreover, even if it had not snowed at all on the day before the accident, the black ice was still an open and obvious danger for the reasons discussed below.

Plaintiff next argues that the trial court erred in determining that the black ice was open and obvious as a matter of law. Plaintiff contends that there was testimony that the black ice could not be seen and that the weather conditions were not such that ice in the parking lot could reasonably be anticipated. Going beyond the issue of whether the condition was open and obvious, plaintiff further maintains that the market's employees in charge of salting the parking lot (the two butchers) had been aware of the icy condition, that the market was thus on notice of the hazard, and that the market refused to remedy the situation.

Viewing the evidence in a light most favorable to plaintiff, it is certainly arguable that a genuine issue of material fact exists with respect to whether the black ice was visible on *casual* inspection, considering the testimony of plaintiff's wife that she only detected the presence of the "clear" ice by actually touching it and the testimony of the market's manager that the ice was not visible from a standing position, although he later contradicted this observation. However, we need not answer that particular question, given that there existed indicia of a potentially hazardous condition, i.e., the specific wintry weather conditions present at the time of plaintiff's fall. *Ragnoli*, __ Mich at __; *Cole*, 497 Mich at 881; *Hoffner*, 492 Mich at 464; *Janson*, 486 Mich at 935; *Slaughter*, 281 Mich App at 483. Examined in a light most favorable to plaintiff, the evidence revealed that plaintiff, who was familiar with Michigan's inclement winter weather, slipped and fell at approximately 8:30 a.m., on December 16, 2013, in frigid wintry conditions, with the temperature hovering in the single digits, a slight breeze blowing, a light snow having fallen during the middle of the preceding night as temperatures plummeted, and the presence of several inches of snow on the ground surrounding the market's parking lot. In light of this evidence and our Supreme Court's "black ice" orders and the opinion in *Hoffner*, plaintiff has no viable cause of action as a matter of law, where the black ice, under the totality of the circumstances, was an open and obvious hazard. Considering the surrounding conditions, a reasonably prudent person would have foreseen and anticipated the icy danger. It is unnecessary to reach plaintiff's additional arguments that the market had notice of the black ice and that the market refused to ameliorate the dangerous condition.

---

[7] The market also claims that plaintiff is confusing the depth of snow existing on the ground and actual snowfall.

## III. CONCLUSION

The trial court did not err in concluding that the market owed no duty to plaintiff because the black ice constituted an open and obvious danger, entitling the market to summary disposition pursuant to MCR 2.116(C)(10).

Affirmed. Having fully prevailed on appeal, the market is awarded taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Michael J. Talbot
/s/ Peter D. O'Connell