*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK RUSZKOWSKI and LORI
RUSZKOWSKI, Individually and as Guardians of
KAYLA FORTIN, a legally incapacitated person,

       Plaintiffs-Appellees,

v

MUNSON HOME SERVICES, INC.,

       Defendant-Appellant.

UNPUBLISHED
August 20, 2019

No. 341455
Otsego Circuit Court
LC No. 16-016361-NH

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant Munson Home Services, Inc., appeals by leave granted the trial court's order denying Munson's motion for summary disposition under MCR 2.116(C)(10) with respect to plaintiffs' breach of contract claim. We affirm.

In 2012, Munson executed a contract with North Country Community Mental Health. The contract required Munson to provide home health and private-duty nursing care in the North Country service region.[1] The contract specified that it was governed by Michigan law. The contract included an attachment and addenda identifying the services that Munson would provide for plaintiff Kayla Fortin, who is 26 years old and is represented in this case by guardians and plaintiffs Lori and Mark Ruszkowski—Kayla's mother and stepfather. Kayla has Batten Disease, which is a fatal, degenerative neurological disorder. During the period relevant to this lawsuit, Kayla was blind, cognitively impaired, unable to speak, and lacked the capacity to move on her own.

---

[1] North Country covers the northwest lower peninsula as the regional service provider for the Michigan Community Mental Health Services Program, which dispenses federal Medicaid and state funding for home health services for persons with disabilities.

In 2013, North Country and Munson executed an addendum to the contract, confirming, among other matters, that the contract required Munson to provide 60 hours of care for Kayla per week by licensed practical nurses (LPNs). Munson employed a couple of LPNs to care for Kayla. Their duties included suctioning Kayla's throat to remove respiratory secretions. In October 2013, Kayla was hospitalized with pneumonia and respiratory problems, which plaintiffs alleged resulted from improper suctioning performed by the LPNs. Kayla was again hospitalized in November 2013, and during that stay a piece of tubing was found in her rectum. Plaintiffs alleged that the tubing had broken off during suctioning and had passed through Kayla's digestive system. Plaintiffs acknowledged that Kayla used other tubing, including a feeding tube, but they maintained that the broken tubing was a suctioning tube. Plaintiffs' expert physician could not confirm that the broken tubing was a suctioning tube or that the tubing had broken during suctioning.

In January 2014, plaintiff parents installed "nanny-cams" to videotape Kayla's treatment by the LPNs. The LPNs were informed of the fact that the nanny-cams were in operation. Plaintiffs alleged that the recordings depicted one of the LPNs mistreating Kayla to such an extent that it constituted physical abuse. Plaintiffs further asserted that the LPN's misconduct caused them, including Kayla, to suffer emotional distress and mental anguish. In February 2014, North Country terminated its contract with Munson. A subsequent investigation by the Office of Recipient Rights, which included a review of the nanny-cam footage, resulted in the conclusion that the LPN had treated and handled Kayla in an aggressive and degrading manner that could reasonably be construed as having caused pain. Our review of the investigative report reveals emotional, verbal, and physical abuse that is disturbing.

This case has an extensive procedural history, with multiple amended complaints, causes of action, and motions for summary disposition. Relevant to this appeal, plaintiffs alleged claims of medical malpractice and breach of contract against Munson. It appears that the breach of contract claim was predicated on the alleged abuse of Kayla and, to a lesser extent, the alleged improper medical care and treatment of Kayla in regard to suctioning. The alleged damages flowing from the breach of contract included emotional distress and mental anguish, as purportedly suffered by all three plaintiffs. The trial court granted summary disposition in favor of Munson under MCR 2.116(C)(10) with respect to the medical malpractice claim, concluding that plaintiffs had failed to present evidence sufficient to create a genuine issue of material fact on the elements of proximate cause and damages. In reaching this conclusion, the court focused on the medical documentation and the testimony of the competing healthcare experts regarding Kayla's condition.

With regard to the breach of contract claim, the trial court ultimately denied Munson's motion for summary disposition, which had challenged plaintiffs' alleged entitlement to damages, and which had disputed plaintiffs' claim that they were intended third-party beneficiaries to the contract between Munson and North Country. The court found that the contract was one for personal services and that it was foreseeable that Kayla would suffer mental anguish should the contract be breached. The trial court further ruled that there was a genuine issue of material fact regarding whether Munson expected or should have expected plaintiff parents to experience mental anguish if the contract for personal services were to be breached. Finally, the trial court determined that there was a genuine issue of material fact concerning whether plaintiff parents were intended third-party beneficiaries; the court appeared to accept

that Kayla was a third-party beneficiary. Munson appeals by leave granted the trial court's denial of its motion for summary disposition with respect to the claim of breach of contract. *Ruszkowski v Munson Home Servs, Inc*, unpublished order of the Court of Appeals, entered June 27, 2018 (Docket No. 341455).

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). We also review de novo the interpretation of a contract. *Schmalfeldt v North Pointe Ins Co,* 469 Mich 422, 426; 670 NW2d 651 (2003).

Summary disposition under MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. A court may only consider substantively admissible evidence actually proffered by the parties. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

On appeal, Munson first argues that the trial court's summary disposition rulings were inconsistent, where the court found that plaintiffs had failed to present sufficient evidence of medical malpractice damages, but where plaintiffs were allowed go forward with their claim for contract damages. Munson contends that the damages sought by plaintiffs for purposes of the medical malpractice claim were identical to those sought in relation to the contract claim. Munson reasons that if the evidence was insufficient as a matter of law to establish medical malpractice damages, the evidence must also have been inadequate as a matter of law to show contract damages.

While we shall address the matter of contract damages in more detail below, we initially reject the premise of Munson's argument concerning the alleged inconsistency in the trial court's rulings. Assuming for the sake of argument that plaintiffs were requesting damages identical in form, nature, and extent as to the medical malpractice claim and the breach of contract claim, the fact that the trial court determined as a matter of law that damages for medical malpractice were not shown does not necessarily mean that legal error is established in regard to recognizing a

claim for contract damages. The trial court may have erred in its ruling on the question of medical malpractice damages, but that issue is not before us.[2] Setting aside for the moment the third-party beneficiary issue, the only pertinent question is whether damages are available to plaintiffs for the alleged breach of contract.

In *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 691-692; 588 NW2d 715 (1998), this Court was confronted with the following facts:

> Plaintiff enrolled her eighteen-month-old daughter in day care with defendant. On December 9, 1992, plaintiff dropped off her daughter at defendant's facility at lunch time. Plaintiff's daughter had been prescribed medication, and plaintiff filled out an authorization form granting defendant's employees permission to administer the medication to her daughter that day. Just after 5:00 p.m. on December 9, 1992, one of defendant's employee's placed the child, who had fallen asleep, in a crib in the infant room. At approximately 6:00 p.m., defendant's employees locked the doors of the facility and went home for the day, apparently unaware that plaintiff's daughter was still sleeping in the crib. Shortly thereafter, plaintiff returned to the facility to pick up her daughter and found the facility locked and unlit. Plaintiff called 911. A police officer who responded to the call looked through a window of the facility, with the aid of a flashlight, and saw the child sleeping in the crib. Another officer then broke a window and retrieved the child from the building. The child was upset after the incident, but was not physically harmed. When plaintiff went into the facility to retrieve her daughter's belongings, she apparently found the medication authorization form and observed that it had not been initialed to indicate that the child had been given the medication. Plaintiff alleged that she suffered emotional distress as a result of the incident.

One of the claims alleged by the plaintiff in *Lane* was breach of contract, which the circuit court summarily dismissed. *Id.* at 692. This Court, in reversing the circuit court's ruling, acknowledged that damages for mental anguish or emotional distress are typically not recoverable in breach of contract actions involving a commercial contract, but the *Lane* panel distinguished commercial contracts from personal contracts, explaining:

> The recovery of damages for the breach of a contract is limited to those damages that are a natural result of the breach or those that are contemplated by the parties at the time the contract was made. Therefore, it is generally held that damages for emotional distress cannot be recovered for the breach of a

---

[2] We also note that the trial court engaged in an extremely in depth and lengthy discussion and analysis of the medical malpractice claim. And in reviewing the court's extensive ruling, it is arguable that perhaps the court did not find that Kayla had no injuries, but rather simply determined that she had no injuries *caused by* any medical malpractice. Furthermore, the damages issue relative to the medical malpractice claim focused on Kayla's injuries and not damages incurred by her parents.

commercial contract. However, our Supreme Court has recognized that damages for emotional distress may be recovered for the breach of a contract in cases that do not involve commercial or pecuniary contracts, but involve contracts of a personal nature. *Stewart v Rudner*, 349 Mich 459, 469; 84 NW2d 816 (1957). Our Supreme Court explained:

> "When we have a contract concerned not with trade and commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering. In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it."

> Examples of personal contracts include a contract to perform a cesarean section, a contract for the care and burial of a dead body, a contract to care for the plaintiff's elderly mother and to notify the plaintiff in the event of the mother's illness, and a promise to marry.

> *We believe that a contract to care for one's child is a matter of "mental concern and solicitude," rather than "pecuniary aggrandizement."* Therefore, like the contract to care for the plaintiff's elderly mother, the contract involved in the instant case was personal in nature, rather than commercial. At the time the contract was executed, it was foreseeable that a breach of the contract would result in mental distress damages to plaintiff, which would extend beyond the mere annoyance and vexation that normally accompanies the breach of a contract. Such damages are clearly within the contemplation of the parties to such a contract.

> The trial court granted summary disposition of plaintiff's breach of contract claim pursuant to MCR 2.116(C)(8) on the ground that plaintiff failed to plead that she suffered a definite and objective physical injury as a result of her emotional distress. However, damages may be awarded for emotional distress caused by a breach of a personal contract even where the emotional distress does not result in a physical injury. [*Lane*, 231 Mich App at 692-694 (citations and quotation marks omitted; emphasis added).]

In this case, the trial court correctly found that the contract between Munson and North Country constituted a contract for personal services that were devoted to the care and comfort of Kayla. Damages can thus be awarded for emotional distress and mental anguish, even if Kayla suffered no physical injury. The alleged injuries pertaining to the medical malpractice claim were tied to issues related to the suctioning performed by the LPNs, not the alleged physical abuse of Kayla. Indeed, Munson's argument on appeal focuses on alleged physical injuries and

its stance that there was inadequate evidence to support those claimed injuries, whether in the context of the medical malpractice claim or the breach of contract claim.[3] Munson effectively fails to address emotional distress or mental anguish damages for breach of contract relative to Kayla and her parents and as alleged in the complaint and supported by deposition testimony. Munson does not even mention the opinions in *Lane* and *Stewart*, even though the trial court relied heavily if not exclusively on those cases. And medical or expert testimony was not necessary to prove emotional distress and mental anguish. Plaintiffs can pursue a breach of contract claim based on damages in the form of emotional distress or mental anguish, so long as they qualify as third-party beneficiaries to the Munson-North Country contract, which leads us to the second and final issue on appeal.

Munson argues that the trial court erred in ruling that there existed a genuine issue of material fact as to whether plaintiff parents (not Kayla) were intended third-party beneficiaries to the contract, where the contract was solely for the benefit of Kayla, and where plaintiff parents were not named or mentioned in the contract and did not receive any services under the contract.

MCL 600.1405 provides in pertinent part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

The plain language of MCL 600.1405 reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise; rather, only intended, not incidental, third-party beneficiaries can sue for breach of contract. *Schmalfeldt*, 469 Mich at 427. The *Schmalfeldt* Court observed:

> A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person. By using the modifier directly, the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract. An objective standard is to be used to determine, from the form and meaning of the contract itself, whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status. . . . [A] court should look no further than the form and meaning of the contract itself to determine whether a

___

[3] Some of the confusion in this case must be blamed on the drafting of plaintiffs' complaint, which did not clearly identify and delineate the causes of action, the facts supporting those causes of action, and the alleged damages affixed to each cause of action.

party is an intended third-party beneficiary within the meaning of 1405. [*Id.* at 428 (citations omitted).]

Contrary to the trial court's ruling and Munson's argument, the record contains sufficient information to conclude as a matter of law that plaintiff parents were intended third-party beneficiaries. The contract specified that the relationship between Munson and North Country was "that of purchaser and independent contractor." The contract required Munson "[t]o provide home health and private duty nursing services" and "[t]o provide community living supports to individuals with developmental disabilities . . . ." The contract further directed Munson to "promote the rights of [healthcare service] recipients and [to] protect recipients from violations of rights guaranteed by the Michigan Mental Health Code and by other federal and state laws[.]" In the event of suspected abuse or neglect of a recipient, or unexplained injury of a recipient, the contract required Munson to immediately report the incident or injury. In addition, the contract obligated Munson to "[f]ollow a Person-Centered Plan of Service . . . in the development of treatment or habilitation plans and in the provision of services to recipients." Similarly, attachment A to the contract mandated that Munson provide care and implement services "consistent with the consumer's Plan of Service." The applicable Plan of Service described the nursing care for Kayla, including suctioning, administering medications, and completing tube feedings. The Plan of Service then stated, "Kayla's parents are able to complete all of the above tasks but as they both work, skilled nursing is needed to ensure safety and comfort when they are not available." Included in the goals listed in the Plan of Service was "to provide services and supports that will help alleviate the stress of caring for a child with special needs." The objective of this goal was for the "family [to] use respite care as needed over the next year.

The plain language of the contract and the incorporated attachments demonstrated that plaintiff parents were intended third-party beneficiaries; they are specifically referred to in the contract. The contract expressly contemplated providing assistance to Kayla's parents with respect to her care and alleviating their stress, thereby directly benefitting plaintiff parents. We hold, as a matter of law, that Kayla and her parents were intended third-party beneficiaries to the Munson-North Country contract, allowing all three to sue for breach of contract. In sum, the trial court did not err in denying Munson's motion for summary disposition with regard to plaintiffs' claim for breach of contract.

We affirm. Having fully prevailed on appeal, plaintiffs are awarded taxable costs under MCR 7.219.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause

-7-