*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

**S T A T E   O F   M I C H I G A N**

**C O U R T   O F   A P P E A L S**

THERESE ROOT,

        Plaintiff-Appellant,

and

BEAUMONT HEALTH,

        Intervening Plaintiff,

v

HOLLY PALMER,

        Defendant,

and

FALLS LAKE NATIONAL INSURANCE COMPANY,

        Defendant-Appellee,

UNPUBLISHED
June 29, 2023

No. 361722
Macomb Circuit Court
LC No. 2021-000976-NI

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

In this no-fault insurance action, plaintiff, Therese Root, appeals by right the trial court's order granting summary disposition in favor of defendant, Falls Lake National Insurance Company (Falls Lake), under MCR 2.116(C)(10). The trial court determined as a matter of law that Root made a material misrepresentation in her application for insurance with Falls Lake; therefore, she was not entitled to any personal protection insurance (PIP) benefits from Falls Lake after she was injured in a motor-vehicle accident. We affirm.

Root, who had a no-fault policy issued by Falls Lake, was injured in a car crash involving defendant, Holly Palmer, on April 7, 2020. Intervening plaintiff, Beaumont Health, subsequently provided medical treatment to Root for her accident-related injuries. Root filed suit against Palmer and Falls Lake. Pertinent here, she alleged that Falls Lake unreasonably refused to pay PIP benefits in connection with her injuries sustained in the motor-vehicle accident. Falls Lake denied liability,

asserting that the insurance policy was void *ab initio* because in her application for insurance Root had misrepresented the number of vehicles that she owned or were registered in her name. Although Falls Lake alleged that Root made additional material misrepresentations in the insurance application, the trial court ultimately ruled in favor of Falls Lake solely on the basis of the misrepresentation regarding vehicle ownership or registration by Root, which is the focus of her appellate argument.

Root owned a Ford Escort, and she was driving the Escort when the accident occurred. In the insurance application, she only listed the Escort with respect to identifying vehicles registered in her name or owned by Root. In the application for insurance, Root further and expressly indicated that she did *not* own any other insured or uninsured vehicles and that there were *no* other insured or uninsured vehicles registered in her name. As part of that particular question, the application warned:

> It is unacceptable to not list all vehicles registered in your name as they may cause a premium increase or a declination of coverage. The listing of all vehicles registered in your name is a conditional precedent to binding coverage.

The application also contained the following acknowledgement by the applicant: "I agree that if I conceal or misrepresent a material fact or circumstance relating to the insurance, the policy shall be null and void."

In his deposition, Root's husband, Douglas Root, testified that he and Root jointly owned the Escort. Douglas further stated that he owned a Chevy van. Root testified in her deposition that the van was kept at the couple's residence. She also indicated that the van was drivable or operable. Douglas testified to his belief that the van was uninsured at the time of the accident. He additionally observed that they had the van when Root applied for auto insurance on the Escort. There was testimony that Douglas had used the van in the past for work, at which time it was insured; however, he was not using the van during the period when the insurance application was made and the accident took place because he was not working at the time.

In its brief on appeal, Falls Lake asserts that the van was registered in Root's name. But the record citations given by Falls Lake in support of that proposition do not reveal that the van was registered in Root's name. We could not locate any documentary evidence in the record demonstrating that Root was an owner or registrant of the van. At the summary disposition hearing, counsel for Falls Lake contended that "[a]ccording to the Michigan Secretary of State, that [van] is owned both by Therese Root and Douglas Root." Root's attorney did not challenge that assertion or voice an objection. Indeed, Root has never challenged Falls Lake's claim that Root owned the van or that it was registered in her name at the time she applied for the insurance policy. And in her brief on appeal, Root actually states that "[i]t is undisputed that Ms. Root owned the Chevy van." Accordingly, we proceed on the basis that at the time Root submitted the application for insurance, she owned the van and/or the van was registered in her name.

Paul Serota, the Vice President of the automobile division of Arrowhead Group, which was the entity in control of Falls Lake's underwriting function, explained that Falls Lake required all vehicles to be listed on an insurance application, whether operable or not. Falls Lake also required that all of an applicant's operational vehicles be insured. Serota testified that had Root disclosed

in the insurance application that she owned the van or that it was registered in her name, the policy premium would have increased by $845. In an e-mail to Michael Keough, a personal-injury-protection adjuster, Serota stated that he would not have written the policy for Root had he known that there was an unlisted vehicle that was owned, registered, or regularly operated by applicant Root. In the e-mail, Serota also confirmed that adding the operable and uninsured unlisted van to the policy would have increased the premium by $845. Falls Lake's Rules Manual for Michigan provided:

> 11. All operable motor vehicles registered or owned by the name insured must be listed on the application.

> 12. The listing of all operable motor vehicles registered or owned by the name insured on the application is a condition precedent to binding coverage, and coverage will not or would not have been bound without the disclosure of operable motor vehicles registered or owned by the name insured because the non-disclosure of said vehicle or vehicles constitutes an unacceptable risk.

Falls Lake moved for summary disposition, arguing that Root's failure to list the van constituted a material misrepresentation that allowed Falls Lake to rescind the insurance policy, or, at a minimum, to deny Root's claim because the policy was procured through fraud. Root responded by arguing that Falls Lake was obligated to pay the claim because her failure to list the van was not material. Root reasoned that it was not material because the failure to list the van did not affect the decision by Falls Lake to insure the Escort—the relevant vehicle. The trial court granted the motion for summary disposition, ruling that Root's failure to list the van in the insurance application was a material misrepresentation because it may have exposed Falls Lake "to additional responsibility." The court also ruled that the van was jointly owned by Root and Douglas and that the premium was affected by Root's failure to disclose the van.[1]

On appeal, Root contends that the trial court erred by concluding as a matter of law that her failure to disclose the van in the insurance application amounted to a material misrepresentation. Root argues, therefore, that the trial court erred by granting Falls Lake's motion for summary disposition.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). We also review de novo the interpretation and application of an insurance contract. *Cohen v Auto Club Ins Ass'n*, 463 Mich 525, 528; 620 NW2d 840 (2001).[2]

---

[1] The trial court ruled that there were genuine issues of material fact regarding the other alleged misrepresentations made by Root.

[2] In ascertaining the meaning of a contract, including an insurance contract or policy, this Court gives the words used in the agreement their plain and ordinary meaning as would be apparent to a reader of the instrument. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). A fundamental tenet of Michigan jurisprudence is that an unambiguous contract is not open to

MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

"A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Pioneer State*, 301 Mich App at 377. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). "[S]peculation is insufficient to create an issue of fact." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 282; 807 NW2d 407 (2011). A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); see also MCR 2.116(G)(6).

"[A]n insurer is entitled to rescind a policy *ab initio* on the basis of a material misrepresentation made in an application for no-fault insurance." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 445; 889 NW2d 759 (2016). "Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer. Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *Id*. at 446 (quotation marks and citation omitted). "[I]t is well settled in Michigan that fraud in the application for an insurance policy may allow the blameless contracting party to avoid its contractual obligations through the application of traditional legal and equitable remedies." *Titan Ins Co v Hyten*, 491 Mich 547, 570; 817 NW2d 562 (2012). "[U]nder the no-fault act, an insurer may only deny all coverage under a policy on the basis of fraud if the policy itself was procured by fraud." *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 513;

---

judicial construction and must be enforced as written, thereby respecting the freedom of individuals to arrange their affairs by contract. *Id*. at 468.

967 NW2d 841 (2021). To establish actionable fraud with regard to an insurance policy, the insurer must prove (1) that the insured made a material misrepresentation, (2) that it was false, (3) that when the insured made it, the insured knew it was false, or else made it recklessly, without any knowledge of its truth and as a positive assertion, (4) that the insured made it with the intention that it should be acted on by the insurer, (5) that the insurer acted in reliance on it, and (6) that the insurer thereby suffered injury. *Id.* at 508.

The narrow issue in this appeal is whether Root's misrepresentation was material. "A misrepresentation on an insurance application is material if, given the correct information, the insurer would have *rejected the risk or charged an increased premium*." *Montgomery v Fidelity & Guaranty Life Ins Co*, 269 Mich App 126, 129; 713 NW2d 801 (2005) (emphasis added); see also *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 254; 632 NW2d 126 (2001); *Howard v LM General Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 357110); slip op at 7 ("The purpose of permitting rescission of insurance policies where there has been a misrepresentation is to protect the insurer from having to pay claims that, but for the misrepresentation, it would not have insured.").

Root argues on appeal that there was no evidence whatsoever that the premium for the Escort would have increased had she disclosed the van in the insurance application *and then declined to include the van on the policy.* According to Root, Falls Lake only presented evidence that adding the Chevy van to the policy would have increased the premium. Root similarly maintains that there was no evidence that Falls Lake would have refused to cover the Escort had it known about the Chevy van. We conclude that Root's arguments lack merit because they are unsupported by the record and the law.

Falls Lake presented uncontroverted documentary evidence that had Root disclosed the van when filling out the application, either the premium would have increased by $845 or the application would have been rejected. Under the caselaw, these undisputed facts amount to a material misrepresentation. *Montgomery*, 269 Mich App at 129. With respect to Root's argument, we first note that her hypothetical is just that—a hypothetical; the fact is that she did not disclose the van and then decline to include the van on the policy. Furthermore, there was no evidence that had Root disclosed the van she would have been able to avoid the additional premium by simply declining to insure the van and solely insuring the Escort. Indeed, Serota specifically testified that if a car runs or is operable, Falls Lake requires the owner or registrant to insure that particular vehicle. There was no evidence to the contrary. Root challenges Serota's credibility on the basis of what she characterizes as conflicts in his own testimony and conflicts between his testimony and other documentary evidence.

The bottom line, however, is that Serota's testimony, his e-mail to Keough, the internal operating rules of Falls Lake, and the language in the application itself established as a matter of law that Falls Lake would have charged a higher premium or denied coverage had Root disclosed her ownership of the van and that Root could not have simply declined to insure the uninsured van in an effort to avoid a rejection or an increased premium. Moreover, the insurance application warned the applicant that listing all registered vehicles was required and constituted a "condition[] precedent" to binding coverage; in this case, the condition was not satisfied. We thus conclude that reversal is unwarranted.

We affirm. Having fully prevailed on appeal, Falls Lake may tax costs under MCR 7.219.


/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly