*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT WELLS,

Plaintiff-Appellant,

v

J.I.J.A., INC., doing business as DEXTER WAVERLY MARKET,

Defendant-Appellee.

UNPUBLISHED
December 14, 2023

No. 364446
Wayne Circuit Court
LC No. 21-007986-NO

Before: GLEICHER, C.J., and GARRETT and MALDONADO, JJ.

PER CURIAM.

Robert Wells alleges that he slipped and fell on wet tile in a store owned and operated by defendant, J.I.J.A., Inc., doing business as Dexter Waverly Market. The trial court ruled that the hazard was open and obvious as a matter of law, and that no genuine issue of material fact supported that the Market's negligence caused the fall. Because questions of fact exist with respect to both issues, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Wells fell when entering the Market's store in February 2019. It was sunny and unseasonably warm outside, but there was still "snow and slush" on the ground. It snowed significantly two days prior. Wells testified that he noticed that a roll-out carpet extending inside from the store's entrance "was soaking wet," so he stepped to the side of the carpet onto the tile floor. He recounted, "I stepped over [the carpet]; I walked about four or five feet in the store and I slipped and fell [on the tile]." According to Wells, although he was looking at the floor and the tile appeared dry, he slipped because "the water [was] running off the [carpet] to the tile." Wells indicated that he never saw any water on the tile because of "[t]he way it looks, the reflection of the light on the tile." The following exchange ensued:

> [*Defense counsel*]: How do you know there was water on the tile where you fell if you didn't see it?

[*Wells*]: I said I never—you can't tell there's water or not over there, either one. You cannot tell.

[*Defense counsel*]: So, as we sit here today, you don't actually know if there was water on that tile where you fell, is that right?

[*Wells*]: That's correct.

\* \* \*

[*Defense counsel*]: Is it possible that your shoes were wet when you were walking in and that they were wet as you were walking onto the tile?

[*Wells*]: Yeah.

Later, Wells stated, "There was water on the tile after I fell, . . ." saying he could feel the wetness on him after falling and reiterating that this water originated from the carpet. Wells acknowledged that he never saw any water running from the carpet to the tile, but said the water "must have came [sic] from the rug." Asked whether wetness on his shoes from outside could have caused his fall, Wells said he slipped—after taking numerous steps inside the store—on "a puddle of water" large enough to wet his clothes, thus implicitly denying this premise. He reiterated never seeing any water on the tile, and acknowledged his "assum[ption]" that the water came from the carpet. Wells testified that there was no caution sign warning of the wet floor.

Timothy McEwen, who visited the store with Wells, testified that he also noticed that "the whole carpet was wet" when entering the store, but saw no water on the tile. McEwen specifically noticed that the carpet felt "squishy," but he was not looking at the floor. McEwen did not see Wells fall, and also saw no warning sign in the area. Hekmat Atty, the store manager, stated he saw Saaed Faraj, his employee responsible for inspecting and maintaining the floors, mopping the front entrance numerous times—though he could not remember how many—on the day Wells fell. This included the tile floor next to the carpet. Atty did not remember whether any signs were posted that day warning of wet floors.

Faraj testified that that his job included "some maintenance," and that he would mop the floors "[w]hen we're really slow." Faraj acknowledged that the entrance carpet sometimes gets "really, really wet," requiring him or another worker to put down cardboard, mop water "that's coming off the carpet," or replace the carpet with a dry one. However, Faraj did not remember mopping the front entrance or taking any other related corrective action, or whether he ever placed any warning sign in the area, on the day Wells fell. Rather, Faraj recalled working in the back room and at the counter that day.

The Market moved for summary disposition under MCR 2.116(C)(10). The Market first argued that Wells's causation theory was too speculative to satisfy this element because he merely assumed water overflowed from the carpet onto the tile. Next, the Market argued that Wells failed to show it had notice of any water where Wells fell. Lastly, the Market claimed that the condition was open and obvious because a reasonable person would recognize the floor was slippery given the slushy weather outside. The trial court granted the Market's motion for summary disposition, concluding that Wells created a question of fact regarding notice but not causation, and that the

-2-

hazard was open and obvious as a matter of law. The trial court denied Wells's motion for reconsideration, and he now appeals.

## II. ANALYSIS

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. [*Maiden*, 461 Mich at 120.]

"Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

In premises liability cases, "a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Mouzon v Achievable Visions*, 308 Mich App 415, 418; 864 NW2d 606 (2014) (quotation marks and citation omitted). "A premises owner generally owes a duty to an invitee[1] to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lymon v Freedland*, 501 Mich 933, 934; 903 NW2d 828 (2017).

## A. THE OPEN AND OBVIOUS DOCTRINE

"Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012). "This is an *objective standard*, calling for an examination of the objective nature of the condition of the premises at issue." *Id*. (quotation marks and citation omitted).

In *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001), our Supreme Court held that "the open and obvious doctrine should not be viewed as some type of exception to the duty generally owed invitees, but rather as an integral part of the definition of that duty." *Id*. at 516 (quotation marks omitted). "[T]he general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id*. at 517. Following *Lugo*, and because

---

[1] Wells's status as an invitee is undisputed.

"[q]uestions regarding whether a duty exists are [generally] for the court to decide as a matter of law," *Mouzon*, 308 Mich App at 418, courts often summarily dismissed premises liability cases under the open and obvious doctrine, see e.g., *Kennedy v Great Atlantic and Pacific Tea Co*, 274 Mich App 710, 712-713, 716-717, 722; (2007).

However, in *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___; ___ NW2d ___ (2023) (Docket Nos. 162907 and 163430), our Supreme Court recently overruled *Lugo*.[2] *Id*., slip op at 2, 29. *Kandil-Elsayed* held that "the open and obvious nature of a condition is relevant to breach and the parties' comparative fault[,]" not to the defendant's duty. *Id*., slip op at 2. Questions of breach and comparative fault are almost always for a jury to resolve. "Rather than conduct a narrow analysis of whether an obvious danger is 'effectively unavoidable' or poses an 'unreasonable risk of severe harm,' " the Supreme Court decreed in *Kandil-Elsayed*, a "fact-finder should consider whether 'the possessor should anticipate the harm despite such . . . obviousness.' " *Id*., slip op at 43, quoting 2 Restatement Torts, 2d, § 343A, p 218 (omission in original). "[W]hether a land possessor should anticipate harm from an otherwise open and obvious danger is a relevant inquiry under *breach*, not duty." *Id*. The Court summarized the proper analysis as follows:

> As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee. If breach is shown, as well as causation and harm, then the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly. A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it. [*Id*., slip op at 44.]

Following *Kandil-Elsayed* and construing the evidence in Wells's favor, we conclude that this case presents questions of fact concerning whether an average person with ordinary intelligence would have reasonably discovered the allegedly wet tile upon casual inspection—i.e., whether the condition was open and obvious—and whether, despite its open and obvious nature, the Market should have anticipated harm to Wells. While Wells's testimony conflicted at times,[3] he stated that he slipped on "a puddle of water" on the tile floor at least four feet inside the store, which he only noticed after the fact when his clothes got wet from falling. He maintained that this puddle was not visible, before or after his fall. Believing Wells, reasonable jurors could conclude that the tile's wetness was not observable upon casual inspection.

---

[2] Notably, Wells filed his brief on appeal before *Kandil-Elsayed* was decided. The Market merely acknowledges this decision and, without elaboration, "concedes that th[e open and obvious] issue is moot for the purposes of this appeal, only."

[3] See *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013) ("The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10).").

Other evidence, such as the wet floor mat, arguably supports that Wells should have recognized or been alert for the presence of water on the tile. But this is an argument that a jury must consider. The evidence supports that even if the hazard was open and obvious, the Market should have anticipated harm to Wells, and that the Market failed to exercise reasonable care under the circumstances. Indeed, interpreting the evidence in Wells's favor, he slipped on a hidden puddle at least four feet inside the store. The Market apparently had various procedures for maintaining the entryway and any wet floors in the store, but Faraj could not recall—contrary to Atty's testimony—ever addressing any wet floors or otherwise maintaining the entrance on the day Wells fell. And there is evidence that the Market failed to warn patrons that day of wet floors despite the "soaking" carpet and nearby wet tile. Given these factual questions, the trial court erred by determining that the wet tile was open and obvious as a matter of law.

## B. CAUSATION

A plaintiff must prove in a premises liability action that the defendant's breach of a duty caused the plaintiff's injuries. See *Mouzon*, 308 Mich App at 418. For this analysis, "two causation concepts work in tandem." *Taylor Estate v Univ Physician Group*, 329 Mich App 268, 278; 941 NW2d 672, 677 (2019).

> First, a plaintiff must demonstrate that "but for" the defendant's negligence, the plaintiff's injury would not have occurred. Once a plaintiff produces the factual support establishing a logical sequence of cause and effect, the plaintiff must also come forward with evidence supporting that the actual cause was proximate, meaning that it created a foreseeable risk of the injury the plaintiff suffered. [*Id.* (citation omitted).]

At issue here is whether the evidence sufficed to show factual cause, i.e., a logical sequence of cause and effect leading to Wells's fall.

"While a plaintiff need not prove that an act or omission was the *sole* catalyst for his injuries, he [or she] must introduce evidence permitting the jury to conclude that the act or omission was *a* cause." *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). A plaintiff must establish causation by setting forth "specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Id.* (quotation marks and citation omitted). "Where the connection between the defendant's negligent conduct and the plaintiff's injuries is entirely speculative, the plaintiff cannot establish a prima facie case of negligence." *Id.* at 93. "It is axiomatic in logic and in science that correlation is not causation. This adage counsels that it is error to infer that A causes B from the mere fact that A and B occur together." *Id.* "While factual causation may be established with circumstantial evidence, the evidence must support reasonable inferences of causation, not mere speculation." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 246; 964 NW2d 50 (2020) (quotation marks and citation omitted).

Here, Wells conceded that his shoes might have been wet when he entered the store, maintained that he never saw any water on the tile before or after he fell, and at one point stated that he did not actually know whether there was water on the tile where he fell. The Market argues that Wells's assumption regarding causation—that he slipped on water coming off of the soaked

carpet onto the tile—was overly speculative. However, we must reserve conflicts in Wells's testimony for the trier of fact. Wells provided specific facts supporting that the floor tile was wet from the nearby carpet, causing him to slip and fall. And sufficient evidence supports that Wells's fall on the wet tile was due to the Market's breach, either by failing to correct or at least warn of water at the store's entrance or elsewhere on the floors.

Critically, Faraj acknowledged that the entrance carpet can become extremely wet and leak onto the surrounding tile, necessitating cleanup, and that he did not remember mopping or otherwise addressing any wet floors on the day Wells fell. Both Wells and McEwen stated that the entrance carpet was noticeably, significantly wet. And Wells testified that after he slipped on the nearby tile, he realized he had slipped and fallen in a "puddle" because his clothes were now wet. Given this evidence, and notwithstanding Wells's isolated acknowledgment that his shoes could have been wet from outside, reasonable jurors could infer that Wells slipped and fell on a puddle of water leaking from the carpet to the tile. Accordingly, summary disposition was improper.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kristina Robinson Garrett
/s/ Allie Greenleaf Maldonado